# Applicability of Emoluments Clause to Proposed Service of Government Employee on Commission of International Historians

A government employee's proposed service as a member of a commission of international historians established under the auspices of the Austrian government would violate the Emoluments Clause of the Constitution, U.S. Const. art. I, § 9, cl. 8.

July 30, 1987

MEMORANDUM OPINION FOR THE ACTING ARCHIVIST OF THE UNITED STATES

This memorandum responds to your request of July 27, 1987, for our views on the applicability of the Emoluments Clause of the Constitution to proposed service by Mr. A, an employee of the National Archives, as a member of a commission of international historians established to review the wartime record of Dr. Kurt Waldheim, President of Austria. According to the information you have provided us, the Commission was established at the request of the Austrian government, and is being funded entirely by the Austrian government. You indicate that Mr. A has asked that he be permitted to accept an invitation to serve as a member of the commission, extended to him by the commission's co-chairman, in his private capacity. Although you have stated that Mr. A would be entitled to reimbursement of his expenses and an honorarium from the Austrian government, we understand that Mr. A has indicated a willingness to forego the honorarium and to rely upon private sources of funding for his expenses.

As discussed more fully below, we believe that, in the circumstances as we understand them, Mr. A's acceptance of the invitation to serve as a member of the Commission would be inconsistent with the prohibition in the Emoluments Clause against a federal official's accepting an "office" from a foreign state.

Article I, § 9, cl. 8 of the Constitution provides:

> No title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the consent of Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.

The Emoluments Clause, adopted unanimously at the Constitutional Convention of 1787, was intended by the Framers to preserve the independence of foreign ministers and other officers of the United States from "corruption and

89

foreign influence." 3 M. Farrand, *Records of the Federal Convention of 1787* 327 (1966) *(Farrand)*. *See also* 2 *Farrand*, at 327, 389.[1] Consistent with its expansive language and underlying purpose, the provision has been interpreted as being "particularly directed against every kind of influence by foreign *governments* upon officers of the United States, based upon our historic policies as a nation." 24 Op. Att'y Gen. 116, 117 (1902) (emphasis in original). *See also* J. Story, *Commentaries on the Constitution of the United States* § 684 (Carolina Academic Press 1987) (1833 Abridgement) ("the provision is highly important, as it puts out of the power of any officer of the government to wear borrowed honours, which shall enhance his supposed importance abroad by a titular dignity at home"). By its terms, the prohibition is directed not just to payments of money of gifts from foreign governments, but also to the acceptance of an "office."

There seems little doubt that Mr. A occupies an "Office of Profit or Trust under [the United States]" as that phrase is used in the Emoluments Clause.[2] And the Emoluments Clause is plainly applicable where an official is offered the gift, title or office in his private capacity.[3] Moreover, as we understand the circumstances of the Commission's establishment and funding, it is clear that the invitation in this case came from the Austrian government, itself indisputably a "foreign state" under the Emoluments Clause.[4]

The only question as to which there appears to be any issue is whether acceptance of membership on the Commission would constitute acceptance of an "office" under the Emoluments Clause. We believe that it would.

---

[1] Farrand reports Governor Randolph's explanation of the Emoluments Clause at the Virginia Convention as follows:

> [This] restriction restrains any persons in office from accepting of any present or emolument, title or office, from any foreign prince or state. . . . This restriction is provided to prevent corruption. All men have a natural inherent right of receiving emoluments from any one, unless they be restrained by the regulations of the community. An accident which actually happened, operated in producing the restriction. A box was presented to our ambassador by the king of our allies. It was thought proper, in order to exclude corruption and foreign influence, to prohibit any one in office from receiving or holding any emoluments from foreign states I believe, that if at that moment, when we were in harmony with the king of France, we had supposed that he was corrupting our ambassador, it might have disturbed that confidence, and diminished that mutual friendship, which contributed to carry us through the war.

3 *Farrand* at 327.

[2] *See* 27 Op. Att'y Gen. 219 (1909) (postal clerk holds an office of profit or trust for Emoluments Clause purposes, because he "holds his appointment from a head of a Department . . . , receives for his services a fixed compensation from moneys appropriated for the purpose by Congress, . . . has regularly prescribed services to perform, and his duties are continuing and permanent, and not occasional and temporary"). *See also* "Application of Emoluments Clause to Part-Time Consultant for the Nuclear Regulatory Commission," 10 Op. O.L.C. 93 (1986) (part-time staff consultant for NRC holds a position requiring his undivided loyalty to the United States).

[3] *Cf.* "Assumption by People's Republic of China of Expenses of U.S. Delegation," 2 Op. O.L.C. 345 (1978) (Emoluments Clause does not prohibit assumption by the People's Republic of China of the expenses of an official U.S. delegation).

[4] Even if it could be concluded that the invitation in this case had been extended by an international body, we believe the concerns expressed by the Framers in the Emoluments Clause would still be applicable. In this regard, we note that the Foreign Gifts and Decorations Act, by which Congress gave its express consent for officials to accept gifts from foreign countries under certain limited circumstances, includes within its definition of "foreign government" "any international or multinational organization whose membership is composed of any unit of foreign government." 5 U.S.C. § 7342(a)(2)(B)

Although we have found no case or other formal precedent directly on point, there are several Attorney General opinions that indicate that a United States government official's acceptance of membership, in a personal capacity, on an entity established and funded by a foreign government may violate the Emoluments Clause. In 13 Op. Att'y Gen. 537 (1871), Attorney General Akerman considered "whether an American minister to one foreign power can accept a diplomatic commission to the same power from another foreign power." He concluded that:

> Unquestionably, a minister of the United States abroad is not prohibited by the Constitution from rendering a friendly service to a foreign power, even that of negotiating a treaty for it, provided he does not become an officer of that power. But whatever difficulties may grow out of the vagueness with which this term is defined in the books, it is clear that the acceptance of a formal commission as minister plenipotentiary creates an official relation between the individual thus commissioned and the government which in this way accredits him as its representative.

*Id.* at 538. *See also* 6 Op. Att'y Gen. 409 (1854) (United States Marshal for Florida could not hold the "office" of Commercial Agent of France).

We are advised by the Legal Adviser's Office of the Department of State that it has construed the Emoluments Clause to prohibit a federal official from accepting, in a private capacity, appointment to a commission established by a foreign government. In 1983, the Legal Adviser informed a member of a Presidential advisory committee that his membership on a "bi-national" commission established by the Costa Rican government constituted acceptance of a foreign "office" prohibited by the Emoluments Clause, and advised him that he must resign.

As a general matter, we believe that a United States government official's membership on an entity established and funded by a foreign government raises serious issues under the Emoluments Clause. In this case, the facts lead us to conclude that Mr. A's membership on the Commission would create the kind of "official relation" between him and the Austrian government that the Framers of the Constitution wished to avoid, and that it therefore constitutes an "office" under the Emoluments Clause. Accordingly, we believe Mr. A is constitutionally prohibited from accepting the invitation to serve as a member of the Austrian Commission.[5]

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[5] Our conclusion in this situation is reinforced by the circumstances surrounding the Commission's creation and its mandate. We do not, however, intend our conclusion respecting the applicability of the Emoluments Clause to suggest that Mr. A would be subjected to improper foreign influence, or otherwise to leave any negative inference respecting the integrity of the service he would render as a member of the Commission.

91